ABSALOM MOSELY *v.* M. B. HAMILTON, and M. B. HAMILTON *v.* A. MOSELY, *et als.*

BURDEN OF PROOF. *Upon officer to show discharge of duty.* No presumption as to the discharge of his duty by an officer can prevail in the face of the evidence of failure to discharge the same, furnished by his own returns. Therefore, where a constable's return showed the levy of executions upon property sufficient to satisfy the same, and he had failed to account to the execution creditor for the proceeds,

*Held,* That the *onus* is upon him and his sureties to show a satisfactory disposition of the property, and failing to do so, their liability for the debt attached.

FROM DAVIDSON.

Appeal from the Chancery Court. H. H. HARRISON, Chancellor.

ED. BAXTER and G. P. THRUSTON for complainant.

W. F. COOPER for defendant.

Mosely v. Hamilton.

NICHOLSON, C. J., delivered the opinion of the Court.

In 1860, M. B. Hamilton recovered three judgments against Benj. Mosely, as principal, and Absalom Mosely and H. H. Holt, as sureties, and E. W. Rainy, as endorser—one for $203 60, and the other two each for $454 05—on all of which Robert Mosely was stayor for Benj. Mosely, the principal.

By his original bill, Absalom Mosely enjoined the executions issued on these judgments, upon the allegation that they were usurious. This allegation being denied on answer, he afterwards filed his amended bill, in which he alleged that the executions had been levied by Blackwell, as a constable, on property of parties to the judgment liable before he was, sufficient for their satisfaction, and that for that reason they ought to be perpetually enjoined.

M. B. Hamilton, thereupon, filed her cross-bill against Blackwell and his sureties, as constable, and against Absalom Mosely, alleging that she had been informed that Blackwell had levied the executions on slaves sufficient in value to satisfy the same, but that he had failed to account to her for the proceeds, and if it should turn out that the proceeds of the slaves so levied on had been exhausted in satisfying prior liens, then that she have a decree against Absalom Mosely and his sureties on his injunction bond.

The sureties of Blackwell rely, in their answer, upon the defence that Blackwell had exhausted all the proceeds of the slaves levied on in satisfying prior claims,

and, therefore, that he was in no default, and no liability rested on them.

The main issue raised by the pleadings and proof was, whether Blackwell, the constable, levied the three executions on a sufficient amount in value of unencumbered property of either of the defendants' therein liable before Absalom Mosely to have satisfied the same if the proceeds had been so applied? The three executions amounted to about $1,100. It is clear from the returns on the three executions that they were levied, as early as October 20, 1860, on the negroes Joseph and Nance, the former valued at $800, and the latter at $600, more than enough to satisfy all the executions, without regard to negro Vina, also levied on, and, probably, worth as much as either of the others, but replevied, but by whom does not appear. Bonds for the delivery of Joseph and Nance for sale, on the 15th of November, 1860, were forfeited. It appears from the proof of J. F. Brown, that about the 22d of November, 1860, he heard Absalom Mosely ask Blackwell if he had property enough levied on to satisfy these three executions. His reply was, "not quite enough." Whereupon, Absalom Mosely delivered to him a negro girl named Caledonia, the property of Robert Mosely, worth from $600 to $800, to be levied on, and that Blackwell took the negro into possession, and it is in proof that he deposited her in jail. It is thus shown that property of the value of $2,000 was levied on by Blackwell for the satisfaction of these executions.

It devolved upon Blackwell and his sureties to show how this property was disposed of, in order to escape the consequence of such levy. After carefully examining the proof adduced by the sureties, we are forced to concur with Chancellor Marks, that they have failed to show that the constable either appropriated the negroes in satisfaction of other prior claims, or that he so applied them otherwise as to relieve himself and sureties from responsibility. We see no satisfactory evidence that there were prior claims upon the property, and after the delivery bonds for Joseph and Nance were forfeited, we find no explanation of his failure then to proceed and make the money. There is evidence, that after taking possession of the negro Caledonia, he placed her in jail, but there is nothing showing why she was not sold. No presumption as to the discharge of his duty by the officer can prevail in the face of the evidence of failure to discharge the same, which is furnished by his own returns. It is possible, that if the sureties had had the benefit of the aid of the officer in making their defence, they might have been able to explain the transactions so as to relieve themselves to some extent from liability; but as the record is presented to us, we are constrained to hold that they are responsible, and to affirm the decree of the Chancellor, with costs.